IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BARRY WINGFIELD, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>C.D.L. ELECTRIC COMPANY, LLC, C.D.L. ELECTRIC COMPANY, INC., AND C.D.L. ELECTRIC AND SIGNALS, INC.<br><br>Defendants. | CLASS AND COLLECTIVE ACTION<br><br>Jury Trial Demanded<br><br>Civil Action No.: 2:26-cv-2165 |

**COMPLAINT**

Plaintiff Barry Wingfield ("Plaintiff"), individually and on behalf of all others similarly situated, through his attorneys, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

**INTRODUCTION**

1. This is a collective action on behalf of Plaintiff and all others similarly situated who worked for C.D.L. Electric Company, LLC ("CDL Electric"), together with C.D.L. Electric Company, Inc. and C.D.L. Electric and Signals, Inc. (collectively, "Defendants") as hourly-paid, non-exempt rail workers and who were unlawfully denied overtime compensation and wages for all hours worked in violation of the Fair Labor Standards Act ("FLSA").

2. Defendants employ and assign these employees to perform railroad safety and compliance work in the field and direct, control, and supervise the manner in which they perform their work. Despite exercising this control, Defendants maintained compensation practices that resulted in employees performing unpaid work and working hours exceeding forty (40) per week without receiving overtime compensation at the required rate.

3. Defendants collectively operate the business and oversee payroll, timekeeping, and work assignments for hourly-paid, non-exempt rail workers, including Plaintiff. These entities share control over employment practices and are jointly responsible for violations of the FLSA and applicable state wage-and-hour laws.

4. Plaintiff brings this action on behalf of himself and other similarly situated rail workers who were employed by Defendants and who were subject to Defendants' unlawful compensation practices in the last three (3) years. Defendants violated the FLSA, 29 U.S.C. § 201 *et seq.*, by failing to pay Plaintiff and other similarly situated rail workers overtime compensation at one and one-half (1.5) times their regular rate of pay for hours worked in excess of forty (40) in a workweek, and by failing to pay for all hours worked.

5. Plaintiff also brings this action pursuant to the Kansas Wage Payment Act, K.S.A. 44-313 *et seq.* ("KWPA"), Oklahoma Protection of Labor Act 40 O.S. § 165.1 *et seq.* ("OPLA"), New Mexico Minimum Wage Act, NMSA 1978, § 50-4-19 *et seq.* ("NMMWA"), and Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500 *et seq.* ("MMWL") on behalf of himself and other similarly situated rail workers in the State of Kansas, the State of New Mexico, the State of Oklahoma, and the State of Missouri who performed work for Defendants and who, during the applicable limitations period, were unlawfully denied payment of all earned wages for all hours worked.

6. Plaintiff seeks recovery of unpaid wages within the applicable limitations period for each claim, including three (3) years for willful FLSA violations and up to five (5) years for Kansas wage-payment claims to the extent permitted by Kansas law, and further seeks the statutory penalty available for willful nonpayment to the extent permitted by the applicable limitations period.

7. Defendants violate federal and state wage-and-hour laws by maintaining uniform timekeeping and payroll practices that fail to pay hourly-paid, non-exempt rail workers for all compensable work time, including:

a. Failing to pay for required pre-shift work, including vehicle inspections, job-readiness tasks, and preparation of job briefing materials performed before workers are permitted to clock in and before traveling to the employer-designated job site;

b. Failing to pay for required post-shift work, including end-of-day documentation, reporting, and closeout tasks that workers are required to complete after being directed to clock out at the job site, including after returning to the hotel during travel assignments;

c. Failing to pay for required daily travel time between hotels and job sites during multi-day assignments, where workers have already completed required pre-shift tasks before departing and are expected to complete required closeout tasks after returning, but are not permitted to record that time;

d. Failing to pay for mandatory training time, including pre-start training and ongoing railroad-specific safety and compliance training that exceeds the paid time allotted and is completed off the clock; and

e. Failing to pay proper overtime compensation by understating recorded hours worked and paying straight-time wages for hours worked in excess of forty (40) in a workweek.

8. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA, individually and on behalf of a putative FLSA Collective defined as:

> *All hourly-paid, non-exempt rail workers employed by Defendants in the United States or any other place covered by the FLSA at any time within the three (3) years preceding the filing of this action through the date of final judgment.*

9. Plaintiff also brings his claims under the KWPA, K.S.A. 44-313 *et seq.*, individually and on behalf of a class pursuant to Fed. R. Civ. P. 23, defined as the "Rule 23 Kansas Class," which consists of:

> *All hourly-paid, non-exempt rail workers employed by Defendants to work in Kansas at any time within the five (5) years preceding the filing of this action through the date of final judgment.*

10. Plaintiff also brings his claims under the NMMWA, NMSA 1978 § 50-4-19 *et seq.*, individually and on behalf of a class pursuant to Fed. R. Civ. P. 23, defined as the "Rule 23 New Mexico Class," which consists of:

> *All hourly-paid, non-exempt rail workers employed by Defendants to work in New Mexico at any time within the three (3) year limitation period preceding the filing of this action through the date of final judgment.*

11. Plaintiff also brings his claims under the OPLA, 40 O.S. § 165.1 *et seq.*, individually and on behalf of a class pursuant to Fed. R. Civ. P. 23, defined as the "Rule 23 Oklahoma Class," which consists of:

> *All hourly-paid, non-exempt rail workers employed by Defendants to work in Oklahoma at any time within the three (3) year limitation period preceding the filing of this action through the date of final judgment.*

12. Plaintiff also brings his claims under the MMWL, Mo. Rev. Stat. § 290.500 *et seq.*, including Mo. Rev. Stat. § 290.527, individually and on behalf of a class pursuant to Fed. R. Civ. P. 23, defined as the "Rule 23 Missouri Class," which consists of:

> *All hourly-paid, non-exempt rail workers employed by Defendants to work in Missouri at any time within the three (3) year limitation period preceding the filing of this action through the date of final judgment.*

## **JURISDICTION AND VENUE**

13. This Court has original subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. § 201 *et seq.*

14. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from the same common nucleus of operative facts as Plaintiff's federal claims.

15. This Court has general personal jurisdiction over Defendants because they engage in continuous and systematic business activities in Kansas, including labor practices and operations that affect Plaintiff, the FLSA Collective, and the Rule 23 Classes.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### Defendants

17. Defendant CDL Electric Company, LLC is a limited liability company organized and existing under the laws of the State of Kansas, with its principal place of business at 1308 N. Walnut, Pittsburg, Kansas 66762.

18. Defendant C.D.L. Electric Company, Inc. is a corporation organized and existing under the laws of the State of Kansas, with its principal place of business located at 1308 N. Walnut, Pittsburg, Kansas 66762.

19. Defendant C.D.L. Electric and Signals, Inc. is a corporation organized and existing under the laws of the State of Kansas, with its principal place of business located at 1308 N. Walnut, Pittsburg, Kansas 66762.

20. Defendants provide electrical and rail infrastructure services, including rail-related safety and compliance support.

21. Defendants are not railroad carriers.

22. Defendants do not operate a railroad.

23. During the relevant time period, Defendants employed Plaintiff, members of the FLSA Collective, and the Rule 23 Classes as hourly-paid, non-exempt rail workers to perform rail safety and compliance work in Kansas and other locations where Defendants conduct business.

**Plaintiff**

24. Plaintiff Barry Wingfield is a resident of Jasper County, Missouri.

25. Plaintiff worked for Defendants as an hourly-paid, non-exempt Rail Worker in Charge from approximately July 14, 2025, through on or about October 13, 2025.

26. Plaintiff was employed by Defendants as an hourly-paid, non-exempt rail worker during the relevant time period, including in the role of Rail Worker In-Charge.

27. Plaintiff has filed his written Consent to Join this action pursuant to 29 U.S.C. § 216(b) contemporaneously with the filing of this Complaint.

## FACTUAL ALLEGATIONS[1]

***Defendants' Operations and Hourly-Paid, Non-Exempt Rail Worker Positions***

28. Defendants employ hourly-paid, non-exempt rail workers to provide rail safety oversight and compliance services in the field, including in Kansas and other states where Defendants assign projects.

29. Hourly-paid, non-exempt rail workers monitor contractors performing work on or near railroad property and ensure compliance with railroad rules, job briefings, and safety requirements.

---

[1] The allegations in this Complaint, unless otherwise specified, refer to the time period of three (3) years prior to the filing of this Complaint through the present.

30. Defendants also assign hourly-paid, non-exempt rail workers to other field roles besides Rail Workers In-Charge ("RWIC"), including Trackside Utility Coordinators ("TUCs") and Grade Crossing Monitors ("GCMs").

31. As an RWIC, Plaintiff was responsible for overseeing contractor work occurring on or near railroad property and ensuring compliance with railroad safety rules. This role required Plaintiff to coordinate with contractor crews, conduct required job briefings, monitor work activities during the shift, and complete safety documentation related to the work performed.

32. TUCs work directly in the field with third-party utility contractors performing work within railroad right-of-way, serve as the primary on-site point of contact for those contractors, and ensure compliance with client railroad safety standards while utility work proceeds on or near railroad property.

33. GCMs provide on-site protection at crossings affected by the work, including flagging and directing public traffic to ensure safe passage while railroad-related work is underway.

34. These positions are all hourly, non-exempt rail worker roles used by Defendants to provide field rail safety and compliance services.

35. Hourly-paid, non-exempt rail workers perform their duties in a mobile, field-based environment, with assignments performed at varying job sites and daily reporting and documentation tied to the work performed.

36. Defendants provide field resources, including a company vehicle and a company phone, for work-related communications and timekeeping functions.

37. Defendants assign hourly-paid, non-exempt rail workers to projects in multiple states and relocate them based on operational needs.

38. During the relevant period, rail worker assignment locations have included projects in Kansas, Oklahoma, Missouri, and New Mexico.

39. During his employment, Plaintiff worked for Defendants on assignments in Kansas, Oklahoma, Missouri, and New Mexico and was subject to Defendants' timekeeping and payroll practices on those assignments.

40. Hourly-paid, non-exempt rail workers' assignments are organized around contractor-driven schedules and daily job site coordination, including meeting at a designated location near the employer-designated job site and remaining available to oversee contractor activity for the duration of the day.

41. These project demands and required oversight responsibilities routinely require them to work more than forty (40) hours in a workweek.

42. Defendants assign hourly-paid, non-exempt rail workers to multi-week projects in different states and frequently require them to stay in hotels near the job site during the assignment.

43. Hourly-paid, non-exempt rail workers travel in employer-provided light-duty vehicles, including pickup trucks such as a Chevy Colorado, to the day's job site and remain available to provide safety oversight, coordination, and compliance support until contractor work concludes for the day. These work vehicles are required for the assignment and are used for work purposes, not for commercial freight hauling.

***Defendants' Timekeeping and Pay Practices***

44. Defendants pay hourly-paid, non-exempt rail workers on a weekly payroll cycle. Their workweeks end on Sunday, and Defendants issue wages by direct deposit on the following Friday.

45. Pay records list "Regular" hours and "Overtime" hours and reflect a regular hourly rate.

46. Defendants pay some overtime at one and one-half (1.5) times the regular rate when overtime hours are recorded and coded as overtime.

47. Defendants' pay records reflect that overtime was not coded consistently from one pay period to the next. In some pay periods, recorded hours in excess of forty (40) were reflected as regular hours without a corresponding overtime entry, while in other pay periods, overtime was separately coded.

48. As a result, hours worked over forty (40) are sometimes paid at the regular hourly rate rather than at one and one-half times the regular rate.

49. Defendants require hourly-paid, non-exempt rail workers to record work time using a timekeeping method controlled by Defendants, including a phone-based application on a company-provided device for some, but not all of their time.

50. Defendants enforce a location-based clock-in and clock-out practice. Hourly-paid, non-exempt rail workers are instructed to clock in and out only while at the job site.

51. Defendants' supervisors direct hourly-paid, non-exempt rail workers to clock in or out at the employer-designated job site, even when pre- and post-shift work must be done away from the job site, such as at the hotel (and, when applicable, at home).

52. Because hourly-paid, non-exempt rail workers are required to perform job-readiness tasks before arriving at the job site and closeout tasks after leaving the job site, Defendants' location-based clock-in and clock-out directives result in those required tasks being performed outside the time they are permitted to record.

53. Defendants enforce these timekeeping practices through threats of discipline. Hourly-paid, non-exempt rail workers are instructed that clocking out away from the job site, including at a hotel, may be treated as "stealing time" and may result in reprimand or termination.

54. Hourly-paid, non-exempt rail workers are instructed to record only limited time categories and not to include certain recurring parts of the workday, including mandatory pre-shift preparation, daily hotel-to-site travel, and post-shift closeout work.

55. As a result of Defendants' timekeeping and pay practices, Defendants' pay records understate the total hours worked by hourly-paid, non-exempt rail workers, including by excluding compensable pre-shift, post-shift, training, and travel-related work time that Defendants require or permit hourly-paid, non-exempt rail workers to perform for Defendants' benefit.

***Defendants' Shorting Workers' Pay***

56. Under Defendants' policies and supervisor directives, hourly-paid, non-exempt rail workers routinely perform compensable work time that is not recorded and not paid, including, but not limited to, required pre-shift job-readiness work performed at the hotel (and, when applicable, at home) before departing for the job site, travel between the hotel and the job site in the company vehicle that occurs after those work activities have begun, and required closeout documentation.

57. Defendants require hourly-paid, non-exempt rail workers to perform pre-shift work before they are permitted to clock in at the job site.

58. The unpaid pre-shift work includes preparing the job briefing and related safety documentation required to supervise contractor activity at the job site, as well as related job-readiness tasks that must be completed before departing for the job site.

59. Before driving from the hotel (and, on rare occasions, from home) to the day's job site, Defendants require hourly-paid, non-exempt rail workers to prepare the job briefing they must deliver to contractor crews at the start of work.

60. This unpaid pre-shift work preparation includes completing job briefing paperwork with site-specific safety information and emergency contacts, identifying the nearest hospital and other required safety resources.

61. This unpaid pre-shift work preparation must be completed before arriving at the job site so that the rail worker can conduct the required job briefing when contractor crews are ready to begin work.

62. After completing these required pre-shift tasks, hourly-paid, non-exempt rail workers travel in company vehicles from hotels to job sites and from job sites back to hotels during travel assignments.

63. Defendants require these pre-shift job-readiness tasks to be completed before workers depart for the job site, and the subsequent hotel-to-jobsite travel occurs after those required work activities have begun.

64. Defendants do not permit hourly-paid, non-exempt rail workers to record that hotel-to-jobsite travel time, even though it occurs after workers have begun performing required work for Defendants' benefit.

65. Defendants require hourly-paid, non-exempt rail workers to complete end-of-day documentation and reporting connected to field assignments, including documenting what occurred during the day and uploading or submitting records into shared folders and systems for review.

66. Defendants' supervisors require hourly-paid, non-exempt rail workers to clock out when contractors begin leaving the site, rather than when they finish all required duties.

67. As a result, workers perform required closeout tasks and documentation after clocking out and outside recorded work time.

68. Plaintiff was required to perform pre-shift inspection and job-readiness tasks before the recorded start of his shift.

69. Plaintiff also regularly traveled between his lodging and the worksite after performing required pre-shift job-readiness tasks and before the start of his recorded shift.

70. At the end of the shift, Plaintiff was required to complete Daily Progress Reports and other closeout documentation.

71. On many occasions, this documentation was completed after leaving the worksite, including after returning to his lodging.

72. Defendants assign hourly-paid, non-exempt rail workers to multi-week projects requiring repeated daily travel and repeated daily pre-shift and post-shift tasks. These unpaid work practices recur throughout travel assignments and projects, resulting in systematic underpayment of wages.

73. Defendants' pay practices for travel distinguish between long-distance assignment travel and daily travel between hotels and job sites.

74. Defendants treat certain long-distance travel, such as travel from home to an assignment location and travel returning home, as compensable, while treating the daily hotel-to-site and site-to-hotel travel time as non-compensable.

75. Defendants require hourly-paid, non-exempt rail workers to complete safety and compliance training connected to their rail assignments, including railroad-specific trainings required to obtain authorization to work on particular railroads and short line systems.

76. Defendants require hourly-paid, non-exempt rail workers to complete required training as a condition of their field assignments.

77. Non-exempt rail workers had accepted employment, were onboarded, and were directed by Defendants to complete some training.

78. Defendants provide limited paid time for mandatory training but assign more training than can be completed in the paid time, resulting in uncompensated training hours.

79. For example, hourly-paid, non-exempt rail workers are paid a forty (40) hour workweek to complete OSHA 30 and related modules.

80. However, the assigned training exceeds forty (40) hours. Thus, the workers complete additional training time off the clock.

81. Defendants continue to assign additional training during employment, including training tied to new railroads or job sites. Defendants expect hourly-paid, non-exempt rail workers to complete these trainings outside scheduled work hours, including at night at hotels during travel assignments.

82. Defendants do not pay for time spent completing this additional required training.

83. These trainings were mandatory, directly related to the employees' job duties, and required for employees to perform their assigned railroad safety functions.

84. When the excluded compensable time is counted, hourly-paid, non-exempt rail workers' total hours worked frequently exceed forty (40) hours in a workweek.

85. Defendants' practices, therefore, result in unpaid straight-time wages for all hours worked and unpaid overtime premium wages for the hours over forty (40) that are not counted because they are not recorded.

***Defendants Knew of the Unpaid Work and Failed to Correct It***

86. Defendants know that their timekeeping rules and supervisor directives cause hourly-paid, non-exempt rail workers to perform compensable work off the clock.

87. Defendants' supervisors are aware that rail workers perform required job-readiness tasks at hotels before leaving for the job site.

88. Defendants' supervisors are aware that the workers continue performing required closeout tasks after job site activity ends.

89. Defendants enforce these directives through discipline threats.

90. Hourly-paid, non-exempt rail workers are told they must clock out at the location and that clocking out later, including at a hotel, is considered "stealing time" and may result in a reprimand or termination.

91. As a result, the workers reasonably understand that they risk disciplinary action if they record time that reflects the full workday.

92. Defendants also know that they assign required training that hourly-paid, non-exempt rail workers complete outside recorded work time. Defendants assign training during employment, including railroad-specific safety training that supervisors expect workers to complete at night at the hotel or after work.

93. Hourly-paid, non-exempt rail workers raise concerns about how and when required training can be completed, and Defendants provide only limited paid time that does not cover all required training hours.

94. Defendants' practices apply to the hourly-paid, non-exempt rail workers.

95. Hourly-paid, non-exempt rail workers on the same assignments are subject to the same clock-out rules, the same restrictions on where time may be recorded, and the same expectation that required tasks are completed before and after clock-out, as well as suffering from unpaid training time.

96. By maintaining and enforcing these practices, Defendants suffer or permit off-the-clock work and fail to pay hourly-paid, non-exempt rail workers for all hours worked.

97. When this uncompensated time is included, rail workers' total hours worked exceed forty (40) hours in many workweeks, resulting in unpaid straight-time wages and unpaid overtime premium wages for the hours over forty (40) that are not counted because they are not recorded.

## COLLECTIVE ACTION ALLEGATIONS

98. Plaintiff re-alleges and incorporates all previous paragraphs herein.

99. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of the "FLSA Collective" defined above.

100. At all relevant times, Defendants were and continue to be an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

101. At all relevant times, Defendants operated an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

102. At all relevant times, Defendants operated an enterprise that had two or more employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce.

103. At all relevant times, Defendants operated an enterprise with an annual gross volume of sales made or business done in excess of $500,000.

104. At all relevant times, Plaintiff and other members of the FLSA Collective were engaged in commerce and/or in the production of goods for commerce and were subject to individual coverage under the FLSA.

105. Plaintiff and other members of the FLSA Collective regularly worked more than forty (40) hours in a workweek as suffered or permitted by Defendants.

106. Defendants subject hourly-paid, non-exempt rail workers, including members of the FLSA Collective, to uniform timekeeping and payroll practices that result in underpayment of straight-time and overtime wages, including by requiring or permitting off-the-clock work and by restricting how and where rail workers may record time for compensable pre-shift, post-shift, and travel-related work.

107. When rail workers' compensable time is fully counted, rail workers work more than forty (40) hours in many workweeks. Defendants fail to pay the full overtime premium required by the FLSA for all hours worked over forty (40), including compensable time that is excluded from recorded hours and, in some pay periods, recorded hours exceeding forty (40) are coded as regular hours with no overtime earnings.

108. As a result of Defendants' practices, in many workweeks, hourly-paid, non-exempt rail workers, including members of the FLSA Collective, work more than forty (40) hours but are not paid all overtime compensation due at the required premium rate.

109. Defendants' conduct and practices are willful and not undertaken in good faith. Defendants knew, or recklessly disregarded, that their timekeeping rules and supervisor directives required or permitted off-the-clock work and resulted in underpayment of overtime compensation under the FLSA.

110. Plaintiff and other members of the FLSA Collective were subjected to the same common unlawful policies and practices that violated the FLSA.

111. With respect to the claims set forth herein, a collective action under the FLSA is appropriate because Plaintiff and the members of the FLSA Collective are similarly situated within the meaning of 29 U.S.C. § 216(b). Plaintiff and the FLSA Collective members are similarly situated because they are hourly-paid, non-exempt rail workers who are subject to the same or similar timekeeping and payroll practices, and their claims arise from the same factual and legal theories.

112. The application of Defendants' unlawful policies and practices did not depend on the individualized circumstances of Plaintiff or other members of the FLSA Collective. Rather, the same practices are applied uniformly to all members of the FLSA Collective.

113. Plaintiff estimates that the FLSA Collective consists of numerous similarly situated hourly-paid employees. The precise number of FLSA Collective members is readily ascertainable from Defendants' payroll and personnel records.

## RULE 23 CLASS ALLEGATIONS

114. Plaintiff re-alleges and incorporates all previous paragraphs herein.

115. Plaintiff brings this Rule 23 class action on behalf of the "Rule 23 Kansas Class," "Rule 23 Oklahoma Class," "Rule 23 New Mexico Class," and the "Rule 23 Missouri Class," all as defined above.

116. Plaintiff also seeks to maintain this action pursuant to Fed. R. Civ. P. 23, as an opt-out class action, on behalf of all hourly-paid, non-exempt rail workers who have been affected by Defendants' common unlawful policies and practices, which include failing to pay all earned wages for all compensable hours worked, including overtime premium wages where

required, in violation of the KWPA, OPLA, NMMWA, and MMWL.

117. These common issues predominate for each of the Rule 23 Kansas Class, Rule 23 Oklahoma Class, Rule 23 New Mexico Class, and Rule 23 Missouri Class because Defendants applied the same timekeeping and pay practices to hourly-paid, non-exempt rail workers performing assignments in each state.

118. Plaintiff brings this Rule 23 class action to recover unpaid earned wages, statutory penalties where applicable, pre- and post-judgment interest, and reasonable attorneys' fees and costs pursuant to the KWPA, OPLA, NMMWA, and MMWL.

119. At all relevant times, Defendants are an "employer" within the meaning of the KWPA, OPLA, NMMWA, and MMWL, and hourly-paid, non-exempt workers are "employees" within the meaning of the KWPA, OPLA, NMMWA, and MMWL.

120. The members of the Rule 23 Classes are so numerous that joinder of all Class members is impracticable. Plaintiff reasonably estimates that there is a substantial number of Class members. The members of the Rule 23 Classes are readily identifiable from Defendants' payroll, timekeeping, and personnel records.

121. There is a well-defined community of interest among the Rule 23 Classes, and common questions of law and fact predominate over any questions affecting individual Class members. These common questions include, but are not limited to, whether Defendants maintain common timekeeping rules and payroll practices that fail to pay hourly-paid, non-exempt rail workers for all compensable hours worked, whether Defendants fail to pay all earned wages when due, and whether Defendants' practices violate the KWPA, OPLA, NMMWA, and MMWL.

122. Plaintiff's claims are typical of the claims of the Rule 23 Classes because Plaintiff and the other Class members are subjected to the same timekeeping rules and payroll practices and suffer wage underpayments as a result of those common practices.

123. Defendants treat Class members similarly with respect to timekeeping and payroll practices, including restricting how and where hourly-paid, non-exempt rail workers may record compensable work time and paying wages based on recorded time that understates hours worked.

124. Accordingly, common questions of law and fact apply to each and every member of the Rule 23 Classes.

125. Plaintiff will fairly and adequately protect the interests of the Rule 23 Classes. Plaintiff has retained counsel experienced in the prosecution of wage-and-hour class and collective actions. Neither Plaintiff nor his counsel has interests that are antagonistic to or in conflict with the interests of the Rule 23 Classes.

126. Defendants' corporate-wide policies and practices affected all Rule 23 Classes similarly, and Defendants benefited from the same type of unlawful conduct with respect to each Class member. Plaintiff's claims arise from the same legal theories as those of the Rule 23 Classes, making this action manageable and efficient as a Rule 23 class action.

127. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the damages suffered by individual Class members are relatively small, making individual litigation economically impracticable. Proceeding as a class action will also avoid duplicative litigation and inconsistent results.

128. This action is manageable as a Rule 23 class action, and Plaintiff and his counsel are aware of no unusual difficulties that would preclude class treatment of the claims.

129. Because the requirements of Rule 23(b)(3) are satisfied, certification of the Rule 23 Classes is appropriate.

**COUNT I**
**(Individual and 29 U.S.C. § 216(b) Collective Action Claims)**
**Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.***
**Failure to Pay Overtime Wages**

130. Plaintiff re-alleges and incorporates all previous paragraphs herein.

131. 29 U.S.C. § 207(a)(1) provides:

> "No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

132. Plaintiff and other members of the FLSA Collective worked more than forty (40) hours in a workweek for Defendants in many workweeks.

133. Defendants' failure to record and pay for all compensable time, including required pre-shift work, post-shift work, travel time, and training time, caused Plaintiff's recorded hours to understate his total hours worked. In workweeks in which Plaintiff's total compensable hours exceeded forty (40), Defendants therefore failed to include all compensable hours in the overtime calculation and failed to pay the overtime premium due on those hours at one and one-half times Plaintiff's regular rate.

134. Defendants failed to pay Plaintiff and other members of the FLSA Collective overtime compensation at a rate not less than one and one-half (1.5) times their regular rates of pay for all hours worked in excess of forty (40) in a workweek, as required by the FLSA.

135. Defendants' conduct and practices, described herein, were willful and not undertaken in good faith.

136. Because Defendants willfully violated the FLSA, a three (3) year statute of limitations applies pursuant to 29 U.S.C. § 255(a).

137. As a result of Defendants' uniform and unlawful timekeeping and pay practices described herein, Plaintiff and other members of the FLSA Collective were deprived of overtime compensation earned, in such amounts to be determined at trial, and are entitled to recover unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, costs, and all other relief available under 29 U.S.C. § 216(b).

**COUNT II**
**(Individual and Fed. R. Civ. P. 23 Kansas Class Action Claims)**
**Violation of the Kansas Wage Payment Act, K.S.A. 44-313 *et seq.***
**Failure to Pay Earned Wages**

138. Plaintiff re-alleges and incorporates all previous paragraphs herein.

139. Defendants were an employer of Plaintiff and the Rule 23 Kansas Class members for purposes of the KWPA.

140. Plaintiff and the Rule 23 Kansas Class members were employees of Defendants for purposes of the KWPA.

141. Defendants were obligated to pay Plaintiff and the Rule 23 Kansas Class members all earned wages on Defendants' regular paydays.

142. Defendants failed to pay Plaintiff and the Rule 23 Kansas Class members all earned wages for all hours worked, including hours worked off the clock as a result of Defendants' uniform timekeeping rules and supervisor directives described herein.

143. Defendants' failure to pay earned wages when due was willful within the meaning of the KWPA. Earned wages were due on Defendants' regular paydays, and Defendants failed to pay those earned wages as required by K.S.A. 44-314. Defendants' failure continued beyond the eighth (8th) day after payment was required.

144. As a result of Defendants' conduct described above, Plaintiff and the Rule 23 Kansas Class members were deprived of earned wages, in such amounts to be determined at trial, and are entitled to recover the total unpaid wages, together with the statutory penalty authorized by K.S.A. 44-315(b), pre- and post-judgment interest, and reasonable attorneys' fees and costs as allowed by the KWPA.

**COUNT III**
**(Individual and Fed. R. Civ. P. 23 Oklahoma Class Action Claims)**
**Violation of the Oklahoma Protection of Labor Act, 40 O.S. § 165.1 *et seq.***
**Failure to Pay Earned Wages**

145. Plaintiff re-alleges and incorporates all previous paragraphs herein.

146. Defendants were an employer of Plaintiff and the Rule 23 Oklahoma Class members for purposes of the OPLA, 40 O.S. § 165.1 *et seq.*

147. Plaintiff and the Rule 23 Oklahoma Class members were employees of Defendants for purposes of the OPLA.

148. Defendants were obligated to pay Plaintiff and the Rule 23 Oklahoma Class members all earned wages on Defendants' regular paydays for all hours worked.

149. Defendants failed to pay Plaintiff and the Rule 23 Oklahoma Class members all earned wages for all hours worked, including compensable travel-related time and other off-the-clock time that is not recorded or paid as a result of Defendants' uniform timekeeping rules and supervisor directives described herein.

150. Defendants willfully withheld wages that were earned and due, and there was no bona fide disagreement as to Plaintiff's and the Rule 23 Oklahoma Class members' entitlement to those wages. Accordingly, Plaintiff and the Rule 23 Oklahoma Class members are entitled to liquidated damages as provided by 40 O.S. § 165.3(B).

151. As a result of Defendants' conduct described above, Plaintiff and the Rule 23 Oklahoma Class members were deprived of earned wages, in such amounts to be determined at trial, and are entitled to recover the total unpaid wages, together with liquidated damages where applicable, pre- and post-judgment interest, and reasonable attorneys' fees and costs as allowed by Oklahoma law.

**COUNT IV**
**(Individual and Fed. R. Civ. P. 23 New Mexico Class Action Claims)**
**Violation of the New Mexico Minimum Wage Act, NMSA 1978, § 50-4-19 *et seq.***
**Failure to Pay Earned Wages and Overtime**

152. Plaintiff re-alleges and incorporates all previous paragraphs herein.

153. Defendants were an employer of Plaintiff and the Rule 23 New Mexico Class members for purposes of the NMMWA, NMSA 1978, § 50-4-19 *et seq.*

154. Plaintiff and the Rule 23 New Mexico Class members were employees of Defendants for purposes of the NMMWA.

155. Defendants were obligated to pay Plaintiff and the Rule 23 New Mexico Class members all wages earned for all hours worked, including overtime premium wages when hours worked exceed forty (40) in a workweek. *See* NMSA 1978, § 50-4-22(D).

156. Defendants failed to pay Plaintiff and the Rule 23 New Mexico Class members all wages earned for all hours worked, including compensable travel-related time and other off-the-clock time that is not recorded or paid as a result of Defendants' uniform timekeeping rules and supervisor directives described herein.

157. Defendants' failure to record and pay all compensable time results in underpayment of straight-time wages and, in workweeks where total hours exceed forty (40), underpayment of overtime premium wages due.

158. Pursuant to NMSA 1978, § 50-4-26(C), Defendants are liable for Plaintiff's and the Rule 23 New Mexico Class members' unpaid or underpaid wages, plus interest, and an additional amount equal to twice the unpaid or underpaid wages.

159. As a result of Defendants' conduct described above, Plaintiff and the Rule 23 New Mexico Class members were deprived of wages owed, in such amounts to be determined at trial, and are entitled to recover unpaid wages, statutory damages where applicable, pre- and post-judgment interest, and reasonable attorneys' fees and costs as allowed by New Mexico law.

**COUNT V**
**(Individual and Fed. R. Civ. P. 23 Missouri Class Action Claims)**
**Violation of the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500 *et seq.***
**Failure to Pay Earned Wages and Overtime**

160. Plaintiff re-alleges and incorporates all previous paragraphs herein.

161. Defendants were an employer of Plaintiff and the Rule 23 Missouri Class members for purposes of the MMWL, Mo. Rev. Stat. § 290.500 *et seq.*

162. Plaintiff and the Rule 23 Missouri Class members were employees of Defendants for purposes of the MMWL.

163. Defendants were obligated to pay Plaintiff and the Rule 23 Missouri Class members all wages earned for all hours worked, including overtime premium wages when hours worked exceed forty (40) in a workweek.

164. Defendants failed to pay Plaintiff and the Rule 23 Missouri Class members all wages earned for all hours worked, including compensable travel-related time and other off-the-clock time that is not recorded or paid as a result of Defendants' uniform timekeeping rules and supervisor directives described herein.

165. Defendants' failure to record and pay all compensable time results in underpayment of straight-time wages and, in workweeks where total hours exceed forty (40), underpayment of overtime premium wages due.

166. Under Mo. Rev. Stat. § 290.527, Defendants are liable for the full amount of unpaid wages and an additional amount equal to twice the unpaid wages as liquidated damages, plus costs and reasonable attorneys' fees.

167. As a result of Defendants' conduct described above, Plaintiff and the Rule 23 Missouri Class members were deprived of wages owed, in such amounts to be determined at trial, and are entitled to recover the total unpaid wages, together with liquidated damages where applicable, pre- and post-judgment interest, and reasonable attorneys' fees and costs as allowed by Missouri law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

a. A declaratory judgment that Defendants' wage practices alleged herein violate the overtime and wage provisions of the FLSA;

b. A declaratory judgment that Defendants' wage practices alleged herein violate the KWPA, OPLA, NMMWA, and MMWL;

c. An order for injunctive relief requiring Defendants to comply with the FLSA, KWPA, OPLA, NMMWA, and MMWL, and to end the unlawful wage practices alleged herein;

d. Certifying this case as a collective action pursuant to 29 U.S.C. § 216(b) with respect to the FLSA claims alleged herein;

e. Certifying the Rule 23 Kansas Class, Rule 23 Oklahoma Class, Rule 23 New Mexico Class, and Rule 23 Missouri Class as class actions pursuant to Fed. R. Civ. P. 23 with respect to the KWPA, OPLA, NMMWA, and MMWL claims alleged herein;

f. Ordering Defendants to disclose, in computer format (or in print if no computer-readable format is available), the names, last known addresses, personal email addresses, telephone numbers, dates of employment, job titles, and locations of employment of all FLSA Collective and Rule 23 Classes;

g. Authorizing Plaintiff's counsel to send notice(s) of this action to all FLSA Collective members, including notice reasonably calculated to apprise them of their rights to opt in and participate in this lawsuit;

h. Designating Plaintiff as the representative of the FLSA Collective and the Rule 23 Classes;

i. Designating the undersigned counsel as counsel for the FLSA Collective and the Rule 23 Classes;

j. Awarding Plaintiff and the FLSA Collective all unpaid overtime compensation, an equal amount of liquidated damages, and reasonable attorneys' fees and costs, as provided by the FLSA;

k. Awarding Plaintiff and the Rule 23 Classes all unpaid earned wages (including unpaid straight-time wages and any unpaid overtime premium wages to the extent recoverable under applicable state law), together with all statutory penalties, liquidated damages, interest, and other remedies available under the KWPA, OPLA, NMMWA, and MMWL;

l. Awarding pre-judgment and post-judgment interest as allowed by law;

m. Awarding an incentive award to Plaintiff for serving as representative of the FLSA Collective and the Rule 23 Classes;

n. Awarding any and all civil penalties and statutory remedies to which Plaintiff and the FLSA Collective and Rule 23 Classes may be entitled; and

o. Awarding such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and applicable law.

Dated: March 26, 2026

Respectfully submitted,

**HOLLIS LAW FIRM**

/s/ Jason Chambers
Jason Chambers, D. Kan. # 24927
8101 College Blvd., Ste 260
Overland Park, KS 66210
T: (913) 385-5400
F: (913) 385-5402
Jason@hollislawfirm.com

*Local Counsel for Plaintiff*

**BROWN, LLC**

Nicholas Conlon (to seek PHV)
Michael Rinderman (to seek PHV)
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5279

nicholasconlon@jtblawgroup.com
michael.rinderman@jtblawgroup.com

*Lead Counsel for Plaintiff*